## Penn v. Pennsylvania Co. for Insurances, Etc., et al.

May 11, 1943.

Stoll, Muir, Townsend, Park & Mohney for appellant.

Robert H. Hays for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is an appeal from a judgment of the Fayette circuit court declaring the rights of the parties under a contract of sale of. a tract of land in Fayette county entered into by the trustees under the will of John P. Crozer, deceased, as the sellers, and Oscar Penn as the purchaser. The sole question presented is whether the trustees have power and authority to convey a fee-simple title to the land.

On November 11, 1942, the appellees, by a written contract, agreed to sell and convey to appellant a tract of 233.71 acres of land owned by John P. Crozer at the time of his death. The consideration named in the contract was $75,950, of which $5,950 was paid to appellees when the contract was entered into and the balance was to be paid upon delivery of the deed. Appellant declined to accept the deed when tendered on the ground that appellees were without power or authority to convey the land, and this suit was instituted. The circuit court adjudged that the trustees under the will of John P. Crozer had full power and authority to sell and convey the land, and that the deed tendered by them to Oscar Penn conveyed a good, marketable, fee-simple title to the real estate described in the petition. Specific performance of the contract was ordered, and the purchaser appeals.

John P. Crozer died testate December 11, 1926, a resident of Delaware County, Pennsylvania. His will was duly admitted to probate in that county on December 17, 1926. His wife, Elizabeth W. Crozer, William I. Shaffer, and John B. Hannum, Jr., were named executors and they qualified as such. By clause 11 of his will the testator designated the Bank of North America & Trust Company, which subsequently merged and consolidated with the Pennsylvania Company for Insurances on Lives and Granting Annuities, and the three individuals whom he had appointed as executors to serve as trustees. Elizabeth W. Crozer and William I. Shaffer resigned and were discharged both as executors and trustees, and the sole surviving executor, John B. Han-

num, Jr., made his final settlement and was discharged as executor, and the balance of the estate remaining in his hands was, on September 9, 1938, by an order of the Orphans Court of Delaware county, Pennsylvania, awarded to the surviving trustees, John B. Hannum, Jr., and the Pennsylvania Company for Insurances on Lives and Granting Annuities, hereinafter referred to as the Pennsylvania Company. Thereafter John B. Hannum, Jr., died, and on May 4, 1942, the appellee J. Allen Hodge was appointed and qualified as cotrustee of the estate of John P. Crozer in place and stead of John B. Hannum, Jr., deceased. After making several specific bequests the testator, by clause 7 of his will, devised the residue of his estate, real, personal, and mixed, wherever situated, to the four named trustees. The residue included the farm here in question, located in Fayette county, Kentucky. By clause 7 the testator devised and bequeathed the residue of his estate to the trustees "to control, manage, invest, reinvest, and keep the same invested, for and during the term of the life of my wife, Elizabeth W. Crozer, the lives of my daughters, Margaret C. Lober, Josephine C. Ludlow, Abigail C. Acker and Elizabeth C. Campbell, and the life or lives of such of my grandchildren, children of my said daughters, Margaret C. Lober, Josephine C. Ludlow, Abigail C. Acker and Elizabeth C. Campbell, as shall be living and in being at the time of my decease." The concluding paragraph of clause 7 reads:

"Immediately upon the death of my last surviving grandchild living at the time of my decease, or upon the death of my last surviving daughter, or upon the death of my said wife, Elizabeth W. Crozer, whichever shall occur last, the trust herein created out of my residuary estate, as aforesaid, shall terminate absolutely, and thereupon, I direct and order my Trustees hereinafter named, to pay over the principal of the said trust, created as aforesaid, to the lineal descendants of my said daughters * * * per stirpes, absolutely forever, free clear and discharged of and from any and all trust or trusts whatsoever."

Clause 8 of the will reads:

"I hereby authorize, and empower my Trustees hereinafter named, to receive from my Executors and to retain as part of my estate, and as part of

the principal of the trust estates hereby created, any investments I may have made, whether legal or not, and hereby authorize and empower my said Trustees to invest, reinvest, alter, vary and change investments and reinvestments, at discretion, not being confined to what are technically known as legal investments and without liability or responsibility for mistakes in judgment.''

By clause 10 of the will the testator authorized his executors, or the survivor of them, ''to sell and dispose of any or all real estate which may at any time form part of my estate, whether at public or private sale or sales, * * * and by proper deed or deeds, * * * to grant, convey and assure the same to the purchaser or purchasers thereof in fee simple, * * *.''

The executors have made their final settlement and have been discharged without having sold the real estate in Fayette county, Kentucky, and the question is: Do the trustees now have the power to sell and convey it? Except for clause 10 of the will, which expressly authorizes the executors or the survivor of them to sell and convey any real estate which may at any time form part of the estate, the answer clearly would be in the affirmative. The general rule is that when an instrument creating a trust directs the trustee to do something, the doing of which cannot be accomplished otherwise than by sale of the property, then a power to sell is implied. Beeler v. Fidelity & Columbia Trust Co., 293 Ky. 361, 169 S. W. (2d) 16. A set form of words is not necessary to create a power of sale in a trust instrument, and no technical, direct or precise words are necessary. Power to sell may be inferred from the general tenor of the instrument, and such a power will be implied when necessary in order to carry out the trust. A testamentary trustee has such powers as are conferred upon him by the terms of the will and such powers as are necessary or appropriate to carry out the purpose of the trust and are not forbidden. Wachs v. Security Trust Company, 287 Ky. 303, 152 S. W. (2d) 969; Goldberg v. Home Missions of Presbyterian Church, 197 Ky. 724, 248 S. W. 219; Vansant v. Spillman, 193 Ky. 788, 237 S. W. 379; Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44; Kratz v. Slaughter's Ex'rs, 185 Ky. 256, 214 S. W. 878; First National Bank v. Lee, Ky., 66 S. W. 413; Girard Trust Company v. Cheeseman, 93 N. J. Eq. 266, 155 A. 745; Scott on Trusts,

Vol. 2, page 1023; Bogert's Law of Trusts and Trustees, vol. 3, sec. 741; 65 C. J. 733, sec. 598; Annotation in 134 A. L. R. 378. As was said in the Vickers case [189 Ky. 323, 225 S. W. 46]:

> "The power granted to a trustee to sell the trust property need not be express, but it may be implied from the conditions of the trust, and frequently from the necessity of selling the property to effectuate the trust, and often it is implied when, from the things authorized to be done and from the language used, it is evident that the creator of the trust intended that the trustee should be clothed with the power to sell."

In Restatement of the Law of Trusts, Vol. 1, sec. 190, the principle is thus stated:

> "The trustee can properly sell trust property if
> "(a) a power of sale is conferred in specific words, or
> "(b) such sale is necessary or appropriate to enable the trustee to carry out the purposes of the trust, unless such sale is forbidden in specific words by the terms of the trust or it appears from the terms of the trust that the property was to be retained in specie in the trust."

In Comment b under this section it is said:

> "The trustee can properly sell trust property if it appears from the language used in the trust instrument that a power of sale was intended to be conferred upon him, although it is not conferred in specific words. Thus, an authorization or direction to the trustee to 'invest and manage,' or to 'invest and reinvest,' or to 'dispose of' the trust property, may confer a power of sale both of real and personal property. In determining the meaning of a provision in the trust instrument resort can be had to the whole of the instrument and to the surrounding circumstances."

In the case before us the legal title to the real estate was vested in the testamentary trustees by clause 7 of the will "to control, manage, invest, reinvest, and keep same invested" during the term of the trust. In clause 8 of the will the testator authorized the trustees to receive from the executors and to retain as part of the

testator's estate and as part of the trust estates created by the will any investments the testator had made, and he authorized and empowered the trustees "to invest, reinvest, alter, vary and change investments and reinvestments, at discretion." Even if clause 8 be construed as referring only to personal property which came into the hands of the executors and passed to the trustees after administration of the estate by the executors had been completed, the similar powers conferred upon the trustees by clause 7 clearly applied to real estate as does the direction "to pay over the principal" of the trust immediately upon its termination. The existence of express powers of sale by the executors contained in clause 10 of the will does not operate to negative any implied power of sale by the trustees after the executors have made their final settlement and have ceased to act as such.

The will of John P. Crozer was before the Supreme Court of Pennsylvania for construction in Crozer v. Green, 298 Pa. 438, 148 A. 506, 507. The question there was whether the executors could convey a good and marketable title to a certain piece of real estate located in Pennsylvania. It was contended that, since the testator had been dead more than a year and the lien of his debts on real estate had expired, no reason existed for keeping alive the power of sale vested in the executors, therefore the power had expired. The court held that the power of sale vested in the executors was still in force and could be exercised by them. There are some statements in the opinion which, when lifted from their context, seem to indicate the court construed the will as vesting the power of sale in the executors exclusively. However, the court had before it only the question as to who had the power of sale during the period of administration of the estate by the executors and, as held by it, clause 10 of the will clearly gave to the executors the exclusive power of sale during such period although the legal title to all real estate was vested in the trustees. In the course of the opinion it was said:

"It is well-established law that, when the purpose of a testamentary power of sale has been accomplished, the power fails. Hence it becomes necessary in each case to judicially ascertain, from the will itself precisely what purpose the testator had in mind when he created the power, and to determine,

from the relevant facts of record, whether that purpose has been fully accomplished. In doing this, all the attending facts at the time of the making of the will, which show the extent of testator's property, his relation to those upon whom he conferred the power, and other such relevant matters, may be considered.''

The opinion then points out that the testator was a very rich man possessed of a great deal of real estate, variously located from Pennsylvania to California, consisting of farms, dwelling houses, tracts of undeveloped land, garages, office buildings, manufactories and warehouses; that in addition to his real property he left more than $3,000,000 of personal property; and that ''testator must have known and realized it would be to the 'detriment and disadvantage' 'of his estate to sell all his real property within a year from his death or at any other definite period of time after his death.''

All that Crozer v. Green decided was that the exclusive power of sale was vested in the executors as long as they acted as such. Two of the executors resigned and were discharged as such, and the remaining executor completed administration of the testator's estate, made his final settlement in the Orphans Court of Delaware county, Pennsylvania, and was discharged as such executor on September 9, 1938, after turning over to the trustees all of the assets and property belonging to the estate. The implied power in clause 7 of the will to sell real estate then vested in the trustees. The testator knew that the trust would continue far beyond the time required for administration of his estate by the executors. The trust was to continue until the death of his wife, his four daughters, and all his grandchildren in being at the time of his decease. He desired his real estate to be sold at such time or times as would be to the best interests of the trust estate, and he must have realized the probability that advantageous sales of all his real estate could not be made during the administration of his estate by the executors or even during the lives of the individual trustees named in the will. He must have contemplated the arising of an emergency which would call for a sale at a date after the death or resignation of all the trustees whom he chose. He devised the residue of his estate to the trustees to ''control, manage, invest, and reinvest, and keep the same invested,'' and immediately upon the

termination of the trust "to pay over the principal" to the lineal descendants of his daughters. He imposed duties upon his trustees which they cannot perform without the power to sell the real estate. Under such circumstances, the power to sell will be implied. The authorities heretofore cited are conclusive of this question.

The next question posed is whether such power may be exercised by the Pennsylvania Company, as surviving trustee by virtue of its merger with the original corporate trustee, and J. Allen Hodges, a successor or substituted trustee. It appears from the record that on April 25, 1929, the Bank of North America & Trust Company, the original corporate trustee, and the Pennsylvania Company were merged and consolidated under the name of the Pennsylvania Company for Insurances on Lives and Granting Annuities. Apparently only the name of the original trustee was changed, and the Pennsylvania Company has all the powers possessed at the time of the merger by the Bank of North America & Trust Company and is the surviving trustee, and as such, under the will, may exercise all the powers conferred upon the trustees. In the order of the Orphans Court of Delaware county, Pennsylvania, approving the final settlement of the surviving executor and awarding the balance to the trustees, entered September 9, 1938, it was adjudged that the Pennsylvania Company was a surviving trustee. But whether the Pennsylvania Company is a surviving trustee or a successor trustee appointed by the court, we think the present trustees may exercise the power of sale. In the absence of indication of personal trust and confidence of the testator in the persons named as trustees, successor trustees appointed by the court are, as a general rule, held to have authority to execute a power of sale conferred upon testamentary trustees. The power of sale is annexed to the office. Haggin v. Straus, 148 Ky. 140, 146 S. W. 391, 50 L. R. A., N. S., 642; Strite v. Wolf, 268 Pa. 221, 110 A. 753; Bogert's Law of Trusts & Trustees, vol. 3, sec. 553; 65 C. J. page 752; Annotation in 116 A. L. R. 187. In Restatement of the Law of Trusts, Vol. 1, sec. 196, the rule is thus stated:

"The powers conferred upon a trustee can properly be exercised by his successors, unless it is otherwise provided by the terms of the trust."

In Comment a it is said:

"If it is not provided by the terms of the trust in specific words that powers conferred upon the trustee may be exercised by successor trustees, such powers can properly be exercised by successor trustees, unless the settlor manifested an intention that they should be exercised only by the trustee originally named."

And in Comment b:

"Powers which are essential to the trust or powers which relate to the effective administration of the trust can ordinarily be exercised by successor trustees. Thus, a power of sale can ordinarily be exercised by successor trustees."

We find nothing in John P. Crozer's will manifesting an intention that the powers, express or implied, conferred upon the trustees should be exercised only by the trustees originally named.

An authenticated copy of the will of John P. Crozer was admitted to probate in the Fayette county court as a will of real estate, in accordance with the provisions of KRS 394.150, and the appellees who hold the legal title to the land agreed to be conveyed may exercise the power to sell and convey just as could a resident trustee under the will if the testator had been a resident of Kentucky, and the will had been probated here in the first instance.

The judgment of the circuit court is in accordance with the views herein expressed, and it is affirmed.